## GARRET B. CONOVER

*v.*

## JOHN L. WALLING and others.

1. A purchaser of part of the real estate covered by a judgment, cannot be an appraiser of defendant's personal property upon a levy under the same judgment, although the judgment creditor does not object.

2. In an injunction bill under a general prayer for relief, an account may be ordered; but where it does not appear that an account has ever been denied, or even demanded, the complainant must pay the costs.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. G. C. Beekman,* for complainant.

*Mr. W. H. Vredenburgh,* for defendants.

THE CHANCELLOR.

The complainant, by his bill, seeks relief especially against the defendant, John W. Herbert, in respect of a judgment held by the latter by assignment, and which was recovered by Charles B. Hulitt against the defendant, Walling, and by Hulitt assigned to Elihu B. Bedle, by whom it was assigned to Henry J. Mount, who assigned it to Herbert. Under an execution issued upon it, a levy was made on the real and personal estate of the defendant, Walling. Afterwards the latter sold a part of the real property, which was subject to the lien of the judgment, to the complainant. That part was subject, with other real estate belonging to Walling, to three mortgages, called in the testimony the Martin mortgage, the Boyd mortgage, and the Herbert mortgage; the last-mentioned mortgage being held by the defendant, John W. Herbert. When Walling conveyed to

the complainant, a release of the property so conveyed from that mortgage was obtained from Herbert. There can be no doubt that it was obtained on the agreement made with Herbert by the complainant and Walling, or one of them, that all arrears of interest on that mortgage should be paid at once.

The release states that the consideration thereof was the payment by Walling of all the interest due on the mortgage. The interest, however, was not in fact paid, and (to say nothing of the additional consideration of payment of the Martin mortgage in full, and all interest due and unpaid and part of the principal of the Boyd mortgage, both of which mortgages were prior to the Herbert mortgage, which Herbert insists was promised as an inducement to him to execute the release, and which was only partly performed,) the consideration for the release expressed therein was never paid. Under proceedings in foreclosure on the Boyd mortgage, the property covered by the mortgages, excepting so much as had been conveyed to the complainant, was decreed to be sold to pay off those mortgages and the judgment above mentioned, and, if necessary for the purpose, the land conveyed to the complainant was to be sold to pay any deficiency in the proceeds of the rest of the property to pay the Boyd and Martin mortgages or the judgment, after application of the proceeds of the sale of the unreleased portion to the payment of those encumbrances in their due order of priority.

The last-mentioned part of the property, at the sale, brought, as the complainant alleges, enough to pay off the mortgages, but the proceeds did not reach the judgment. Whether they were or were not enough to pay off the mortgage of Herbert, is of no importance in this suit. The released part was thereupon set up for sale, and sold to the complainant for $375. He refused to complete his purchase, and the sheriff re-advertised the property, and thereupon the complainant filed his bill for an injunction to restrain the sheriff from selling. The grounds of relief stated in the

bill are that the judgment should be decreed to be satisfied, because it has been almost wholly paid, if not entirely so; and because, if it has not been paid in full, Herbert has so dealt with the property levied upon under it, that in equity it should be deemed to have been paid.  ' The conduct thus complained of is, permitting Walling to use or waste some of the personal property levied upon, and the application to Herbert's own use of another part of it.    The evidence falls short of establishing the complainant's right to relief on either ground.

It is alleged by the complainant that Mount, when he held the judgment, received from Walling, on account of it, an old house which stood on the premises conveyed by Walling to the complainant, on an agreement to credit on the judgment the amount which Mount should receive for the house. The proof is that such was not the agreement, but that it was agreed between Walling and Mount that the latter should take the house at $40 or $45, out of which a debt of $30 or $35 due from Walling to Mount, on a promissory note given by the former to the latter, was to be paid, and the balance was to be credited on the judgment.    It appears from the proof, that in the foreclosure suit before mentioned, credit was given on the judgment for all moneys received by Mount on account of the judgment.

The complainant alleges that after his purchase, at the sheriff's sale, of the land conveyed by Walling to him, he, for his own protection, applied to Herbert for an assignment of the judgment, tendering to him the amount due thereon, and that the latter refused to make the assignment, on the ground that he was unwilling to be instrumental in distressing Walling by a sale of his personal property under execution.    The complainant says that he could then have made the amount of the judgment out of Walling's personal property, which he alleges was worth $700.    He adds that he did not then know that Walling had the six acres of land which Herbert afterwards sold under his execution.    Herbert, he says, told him that if he would pay him the money

for the judgment and wait on Walling for it until the next spring, he would make the assignment; but he, the complainant, refused to pay it on those terms.   He further says that Herbert made no attempt to sell the personal property of Walling under the judgment until March, 1871, and that in the meantime he allowed Walling to sell a young horse and the produce of the property, and himself received from him two heifers.   He says the personal property was appraised at about half its value; that the sheriff called on him to act as an appraiser, but some one objected to him. The tract of six acres was, he says, sold at a great sacrifice.

It appears that Herbert did refuse to accept the money tendered to him, but he says he did so because he was unwilling to act in the matter until he should have had an opportunity to consult his counsel.   He immediately went to see his lawyer, but failed to find him, and when he returned, as he did at once, to the place where the tender was made, the complainant had left it.   He testifies that within two weeks from that time, he told the complainant that he would take the money and make the assignment, and the complainant then declined to carry out his proposition, on the ground that he had not the money then.   He says the complainant then told him that Walling owned the tract of six acres, and said he, Herbert, could make his money out of that and Walling's personal property, and that if he could not the complainant would pay him.   He further testifies that after that he got Walling and the complainant together, and there was an agreement then made by them, and accepted by him, that Walling should pay him $100 on the first of December following, and the balance in the succeeding April, and that if Walling failed to pay in accordance with that arrangement, he was to sell him out, and the complainant was to make up the deficiency; that neither of them paid anything, and he then directed the sheriff to proceed to make the money.   In his testimony in reference to this agreement he is corroborated by Walling, who says it occurred in the fall of the year in which the

sale under the foreclosure took place. He says that the complainant and Herbert and himself met in Freehold; that the agreement was that he was to pay half of the judgment in that fall, and that the complainant and Herbert were to wait upon him until the next spring for the balance; that he agreed to pay one-half down in the fall and the balance in the spring, and that he then thought that he could do it. He adds that they agreed that if he did that they would wait for him, and that he did not make the payments, and they then advertised and met and made an appraisement.

The appraisement appears to have been fair. Though the complainant was, as he ought to have been, rejected as an appraiser, on the ground that he was interested, the objection did not come from Herbert, who was willing that he should serve. The amount of the appraisement was $212, leaving goods to the value of but $12 to be sold under the execution. The two heifers were taken by Herbert, but the evidence shows that it was in pursuance of an agreement between him and Walling and his wife, that he should have them in payment of a note given by Walling to and held by him. One of the heifers belonged to Walling's wife. The evidence shows that the tract of six acres was sold at a fair sale for a good price.

The complainant has not established his claim to any relief, except an account and the allowance of so much money as has been raised under the execution on the judgment since the sheriff's sale under the execution out of this court. The object of his bill was an injunction, and the bill is, in its frame and prayer, an injunction bill merely. Under the prayer for relief generally an account may be ordered in this suit. But, inasmuch as it does not appear that an account has ever been denied or even demanded, and it appears that the sales under the execution were for the advantage of the complainant, he will be decreed to pay the costs of this suit.